1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SIERRA VIEW LOCAL HEALTH CARE          No.  1:15-cv-00689-DAD-SAB
     DISTRICT,
12
                    Plaintiff,
13                                          ORDER DENYING DEFENDANT'S
            v.                              MOTION FOR JUDGMENT ON THE
14                                          PLEADINGS
     INFLUENCE HEALTH, INC., and DOES
15   1 through 100,                         (Doc. No. 75)

16                  Defendants.

17

18          This action came before the court on November 15, 2016, for hearing of defendant's

19   motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

20   Procedure.  (Doc. No. 75.)  Attorney Alexander Reed-Krase appeared on behalf of plaintiff Sierra

21   View Local Health Care District ("Sierra View"), while attorney Daniel L. Baxter appeared on

22   behalf of defendant Influence Health, Inc. ("Influence").  Following oral argument, defendant's

23   motion was taken under submission.  For the reasons explained below, the court will deny

24   defendant's motion for judgment on the pleadings.

25                              FACTUAL BACKGROUND

26          On April 9, 2015, plaintiff Sierra View commenced this action in the Tulare County

27   Superior Court, Case No. PCU260332.  (Doc. No. 1.)  Defendant Influence removed the action to

28   this court from state court pursuant to 28 U.S.C. § 1441(b) on April 8, 2015.  (*Id.*)  The action

                                              1

1    now proceeds on plaintiff's second amended complaint ("SAC"), which alleges the following .

2    On February 26, 2010, plaintiff Sierra View entered into a Software License Agreement

3    ("License Agreement") to purchase software modules from the defendant Influence.  (*Id.* at 3,

4    ¶ 5.)  Plaintiff also entered into a Software Maintenance Agreement ("Maintenance Agreement")

5    with defendant.  (*Id.*)  Defendant submitted notices of completion for software modules that were

6    not finished, and in May 2011, defendant began wrongfully billing plaintiff maintenance fees in

7    connection with the incomplete modules.  (*Id.* at 5, ¶ 11.)  Three years after plaintiff began paying

8    those maintenance fees, plaintiff discovered that only four of the twelve modules purchased from

9    defendant were functioning.  (*Id.* at 7, ¶ 17.)  When defendant refused plaintiff's verbal and

10   written requests for a reduction in maintenance fees, plaintiff stopped making the maintenance fee

11   payments.  (*Id.* at 7, ¶ 18.)  In January 2015, plaintiff's counsel demanded a refund of the paid

12   maintenance fees and notified defendant of plaintiff's CFCA claims.  (*Id.* at 8, ¶ 19.)

13   On October 27, 2015, plaintiff filed a first amended complaint ("FAC").  (Doc. No. 26.)

14   The FAC alleged eight claims against defendant, including four breach of contract claims, one

15   unjust enrichment claim, and three claims under the California False Claims Act ("CFCA"), Cal.

16   Gov. Code, § 12650.  (*Id.* at 1.)

17   On May 20, 2016, defendant filed a motion for judgment on the pleadings as to the FAC,

18   arguing that plaintiff lacked standing to pursue the CFCA claims.  (Doc. No. 58.)  The court

19   granted defendant's motion for judgment on the pleadings on August 5, 2016, and dismissed the

20   three CFCA claims with leave to amend after concluding plaintiff had not pled sufficient facts

21   that, if proven, would demonstrate that it acted as a "prosecuting authority" under the CFCA.

22   (Doc. No. 65 at 6.)  Plaintiff filed the instant SAC on August 25, 2016, re-alleging all eight claims

23   asserted in the FAC.  (Doc. No. 67.)

24   On October 30, 2016, defendant filed the instant motion for judgment on the pleadings,

25   arguing that plaintiff's SAC once again fails to allege facts establishing its standing under the

26   CFCA.  (Doc. No. 75.)  Plaintiff filed an opposition to defendant's motion November 1, 2016.

27   (Doc. No. 77.)  On November 7, 2016, defendant filed a reply.  (Doc. No. 78.)

28   /////

1

## LEGAL STANDARDS

2    Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are

3   closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

4   In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in

5   the complaint as true and construe them in the light most favorable to the nonmoving party."

6   *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

7    The same legal standard applicable to a Rule 12(b)(6) motion applies to a Rule 12(c)

8   motion. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

9   Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in

10   the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of

11   law." *Marshall Naify Revocable Trust v. U.S.*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting

12   *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming v. Pickard*, 581

13   F.3d 922, 925 (9th Cir. 2009) (stating that "judgment on the pleadings is properly granted when

14   there is no issue of material fact in dispute, and the moving party is entitled to judgment as a

15   matter of law"). The allegations of the complaint must be accepted as true, while any allegations

16   made by the moving party that contradict the allegations of the complaint are assumed to be false.

17   *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006);., 896 F. *see also*

18   *Hal Roach Studios v. Richard Feiner & Co* 2d 1542, 1550 (9th Cir. 1990) ("[T]he allegations of

19   the non-moving party must be accepted as true, while the allegations of the moving party which

20   have been denied are assumed to be false."). The facts are viewed in the light most favorable to

21   the non-moving party and all reasonable inferences are drawn in favor of that party. *See Living*

22   *Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005).

23

## ANALYSIS

24    In its motion for judgment on the pleadings, defendant contends that plaintiff Sierra View

25   lacks standing to pursue the three CFCA claims raised in the SAC.  (Doc. No. 75.)

26    Under the CFCA, any person who submits a false claim to the state or a political

27   subdivision may be sued for damages and civil penalties. *See* Cal. Gov. Code § 12651(a); *State*

28   *Ex Rel. Harris v. PricewaterhouseCoopers, LLP*, 39 Cal. 4th 1220, 1227 (2006).  California

1   Government Code § 12652 provides that CFCA claims can only be brought by the Attorney

2   General, the prosecuting authority of a political subdivision, or a private party in a *qui tam* action.

3   *See* Cal. Govt. Code § 12652; *Los Angeles Memorial Coliseum Commission v. Insomniac, Inc.*,

4   233 Cal. App. 4th 803, 819 (2015).  A prosecuting authority of a political subdivision is expressly

5   authorized to pursue recovery where its own political subdivision funds, or the funds of the

6   political subdivision and the state, were wrongfully taken.  Cal. Gov. Code § 12652(b)(1); *see*

7   *also State ex rel. Dockstader v. Hambyi*, 162 Cal. App. 4th 480, 490 (2008) (stating that "CFCA

8   authorizes the prosecuting authority of a local agency to pursue recovery only where its own

9   political subdivision funds are at issue, or where both its own and state funds are at issue"); *State*

10  *ex rel. Harris*, 39 Cal. 4th at 1227.  The CFCA defines "prosecuting authority" as "the county

11  counsel, city attorney, or other local government official charged with investigating, filing, and

12  conducting civil legal proceedings on behalf of, or in the name of, a particular political

13  subdivision."  Cal. Gov. Code § 12650(b)(8).

14      As in their prior motion for judgment on the pleadings, (Doc. No. 58), defendant argues

15  that plaintiff Sierra View lacks standing under the CFCA.  (Doc. No. 75.)  Defendant contends

16  that plaintiff is not a prosecuting authority that may bring suit for political subdivision funds, and

17  that plaintiff also may not properly allege that either Sierra View's Chief Executive Officer

18  ("CEO") or Chief Financial Officer ("CFO") constitute prosecuting authorities.  (Doc. No. 75-1 at

19  7–8.)  Defendant advances two primary arguments in this regard.  First, defendant contends that

20  the text, purpose, and history the CFCA support a narrow interpretation of the term "prosecuting

21  authority," and that a board of directors ("BOD"), board member, employee of the local agency,

22  or other non-lawyer cannot fill the role of a "prosecuting authority" under the statute.  (*Id.* at 9–

23  13.)  Invoking the doctrine of *expressio unius*,[1] defendant argues that the legislature would have

24  specifically authorized hospital districts to serve as prosecuting authorities under the CFCA if it

25  had so intended.  (*Id.* at 12–13.)  Second, defendant contends that decisions from California

---

26  [1] The doctrine of *expressio unius est exclusio alterius* "creates a presumption that when a statute

27  designates certain persons, things, or manners of operation, all omissions should be understood as exclusions."  *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)

28  (citing *Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir. 1991)).

4

1   courts support the idea that a local agency may not properly self-designate its BOD or board

2   members to act as prosecuting authorities under the CFCA, citing *Los Angeles Memorial*

3   *Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 819 (2015).  Finally, defendant argues

4   that plaintiff should not be granted further leave to amend, as amendment under these

5   circumstances would be futile.  (*Id.*)

6          Plaintiff, in opposition to defendant's motion, argues that that Sierra View's elected board

7   of directors, CEO, and CFO, represent the prosecuting authority for the Sierra View political

8   subdivision, and may properly bring suit to recover false claims upon Sierra View.  (Doc. No. 77

9   at 6–8.)  Plaintiff makes two specific contentions in this regard.  First, plaintiff argues that the text

10  and history of the CFCA demonstrate that "prosecuting authorities" statutorily entitled to present

11  claims and recover on behalf of political subdivisions are not limited to public prosecutors, and

12  that Sierra View's BOD, CEO, and CFO may constitute such authorities.  (*Id.* at 6, 10, 11–14.)

13  Second, plaintiff argues that preventing political subdivisions from designating their own

14  prosecuting authorities would deprive them of the ability to bring CFCA actions, in that county

15  counsel and city attorneys have no statutory duty to act on behalf of political subdivisions such as

16  Sierra View, and as there are no statutes designating other local government officials as

17  prosecuting authorities for such political subdivisions under CFCA.  (*Id.* at 8–9.)

18         The only disputed issue before the court is whether Sierra View is a prosecuting authority

19  that may properly bring CFCA claims to recover the relevant funds.  Here, the SAC alleges that

20  Sierra View constitutes "a political subdivision of the State of California," and that plaintiff

21  brings its CFCA claims as a "prosecuting authority" under California Government Code §

22  12650(b)(8).  (Doc. No. 67 at 18, ¶ 68.)  Plaintiff specifically asserts that "the elected [BOD] for

23  Sierra View have authority to investigate, file and conduct legal proceedings as the District's

24  prosecuting authority and hire private counsel to do so," and that the BOD has delegated this

25  authority to the district's CEO, Donna Hefner, and CFO, John Chivers.  (*Id.* at 18, ¶ 69.)  Plaintiff

26  additionally alleges in the FAC that Donna Hefner and John Chivers "are local government

27  officials that have the responsibility to act and are acting as the prosecuting authority for Sierra

28  View."  (*Id.*)

1    In considering the proper interpretation for the phrase "prosecuting authority" under the

2    CFCA, the court must begin with the express language of the statute.  *See Camacho v. Bridgeport*

3    *Financial Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) ("[W]hen the statute's language is plain, the

4    sole function of the courts—at least where the disposition required by the text is not absurd—is to

5    enforce it according to its terms.") (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)); *see*

6    *also Blum v. Stenson*, 465 U.S. 886, (1984) ("[W]e look first to the statutory language and then to

7    the legislative history if the statutory language is unclear."); *Nakano v. United States*, 742 F.3d

8    1208, 1213 (9th Cir. 2014).  Section 12650(b)(8) of the CFCA does not limit prosecuting

9    authorities to county counsel or city attorneys, but instead specifically provides that a prosecuting

10   authority may be any "other local official charged with investigating, filing and conducting civil

11   legal proceedings on behalf of a particular subdivision."  Cal. Gov. Code § 12650(b)(8).

12   However, the statute does not provide explanation of what kinds of entities qualify as "other local

13   officials" under the CFCA.  *Id.*  There is no clear requirement in the statute that a "local official"

14   prosecuting authority have a particular government title, or be a licensed attorney.  *Id.*  While the

15   legislature is assumed to legislate against a backdrop of other statutes, the court has been unable

16   to identify other statutes that use the terms "prosecuting authority" or "other local government

17   official" as terms of art.  *See Carolene Products Co. v. United States*, 323 U.S. 18, 26 (1944)

18   ("[A]doption of the wording of a statute from another legislative jurisdiction carries with it the

19   previous judicial interpretations of the wording.").

20   While defendant argues that application of *expressio unius* resolves the statute's

21   ambiguities, (Doc. No. 75 at 12–13), the court ultimately finds this argument to be unpersuasive.

22   The Ninth Circuit has noted that the doctrine of *expressio unius* is not a mandatory rule of

23   statutory construction, but rather a "product of logic and common sense . . . properly applied only

24   when it makes sense as a matter of legislative purpose."  *United States v. Olmos-Epsarza*, 484

25   F.3d 1111, 1114 (9th Cir. 2007); *see also Estate of Banerjee*, 21 Cal. 3d 527, 539 (1978)

26   (observing that the *expressio unius* principle "is no magical incantation, nor does it refer to an

27   immutable rule. Like all such guidelines, it has many exceptions.").  Here, the CFCA does not

28   expressly authorize hospital districts or district employees to serve as prosecuting authorities.  *See*

6

1    Cal. Gov. Code § 12650(b)(8).  However, it is not clear whether this silence reflects intent to

2    prohibit such entities from bringing CFCA claims, or whether it instead reflects some other

3    legislative aim, such as the intent to promote a flexible rather than a restrictive interpretation of

4    the statute.  Absent any indication that the failure to include hospital districts in the statutory

5    definition of "prosecuting authorities" was a deliberate legislative choice, the doctrine of

6    *expressio unius* is thus inapplicable.  *See Plata v. Schwarzenegger,* 603 F.3d 1088, 1095 (9th Cir.

7    2010)*; Clark v. United Emergency Animal Clinic, Inc.*, 390 F.3d 1124, 1128 (9th Cir. 2004)

8    (*expressio unius* applies only when "items not mentioned were excluded by deliberate choice, not

9    inadvertence") (citation omitted); *see also In re Christopher T.*, 60 Cal. App. 4th 1282, (1998)

10   ("[T]he rule is inapplicable . . . to a statute the language of which may fairly comprehend many

11   different objects"); *In re Michael G.*, 44 Cal. 3d 283, 291 (1988) ("This [*expressio unius*] rule, of

12   course, is inapplicable where its operation would contradict a discernible and contrary legislative

13   intent.").

14          The legislative history of the CFCA also does little to clarify the ambiguity.  *See generally*

15   *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) ("If the statute is ambiguous . . .

16   courts may look to its legislative history for evidence of congressional intent.").  Both parties

17   refer to legislative committee analysis of the False Claims Act, AB 1441 of 1987, arguing that

18   these legislative materials support their interpretation of the term "prosecuting authority."[2]

19   However, the legislative history cited by the parties contains no direct discussion of the terms

20   "prosecuting authority" or "other local government official" under § 12650(b)(8).  Defendant

21   argues that the legislative history indicates that only a district attorney or city attorney may act as

22   a political subdivision's prosecuting authority.  But the committee discussions cited to support

23   this proposition only discuss the possibility that district attorneys and city attorneys may serve as

24   prosecuting authorities, without suggesting that the role may exclusively be filled by these

25   entities.  (Doc. No. 75-3 at 46, 47, 58; 75-3 at 6, 51.)  The legislative history thus does not clarify

26

27   _____

     [2]  The court may properly take judicial notice of legislative history, including committee reports.
     *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th
28   Cir. 2013).

                                        7

1   whether a political subdivision employee may represent an "other government official" within the

2   meaning of that provision.

3        Likewise, neither California courts nor federal courts addressing California law have

4   directly analyzed the meaning of "prosecuting authorities" under the CFCA.  *See generally ANA*

5   *Intern., Inc. v. Way*, 393 F.3d 886, 893 (9th Cir. 2004) ("Looking to judicial precedent is one of

6   those ordinary methods [of construction used to understand a statute]").  The most relevant case

7   in this respect is *Los Angeles Coliseum Commission v. Insomniac, Inc.*, 233 Cal. App. 4th 803

8   (2015).  There, the California Court of Appeals found that plaintiffs, a county coliseum

9   commission and its affiliated public benefit corporation, did not have standing to pursue recovery

10  of political subdivision funds under the CFCA.  *Id.* at 822.  Plaintiffs in that case argued that they

11  had standing to do so based on a novel interpretation of CFCA § 12651(a), and the court

12  ultimately rejected these arguments, concluding that plaintiffs lacked standing in part because

13  they did not constitute "prosecuting authorities" under § 12652(b)(8).  *Id.* at 820–822.  The court

14  based its decision on pleading deficiencies in the complaint, emphasizing that plaintiffs "[did not]

15  suggest or imply that either the Coliseum or the Association [plaintiffs] were otherwise 'charged

16  with the investigating, filing, and conducting civil legal proceedings in behalf of, or in the name

17  of, a particular political subdivision.'"  *Id.* at 822.  However, the court specifically declined to

18  consider the question of what types of officials constitute "prosecuting authorities" under §

19  12650.  *Id.* at 822 n.15 ("We do not have to deal with whether attorneys working in a government

20  agency or subdivision are or can be [prosecuting authorities] for purposes of the False Claims Act

21  because that is not what occurred here.").  Thus, while both parties here argue that the decision in

22  *Insomniac* weighs in favor of their respective arguments, the decision in that case ultimately

23  failed to address or resolve the statutory interpretation question currently before this court.

24       Recognizing the lack of authority addressing the issue, this court concludes that the text,

25  purpose, and context of the CFCA weigh more strongly in favor of a broad interpretation of the

26  term "prosecuting authority" as used in that statute.  As noted above, the explicit text of

27  § 12650(b)(8) establishes that any "prosecuting authority" for a defrauded political subdivision

28  may bring a CFCA claim on behalf of that political subdivision.  Cal. Gov. Code § 12650(b)(8).

1    This provision specifically provides that multiple entities can play the role of a "prosecuting

2    authority," namely, "county counsel, city attorney, or other local government official charged

3    with investigating, filing, and conducting civil legal proceedings on behalf of, or in the name of, a

4    particular political subdivision." *Id.* To give effect to all elements of this provision, the

5    "prosecuting authority" for a political subdivision must therefore be able to include entities apart

6    from county counsel or city attorneys. To conclude otherwise would render the statutory

7    language concerning "other local government officials" superfluous. *See generally Hibbs v.*

8    *Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its

9    provisions, so that no part will be inoperative or superfluous, void or insignificant.").

10            The statutory context also sheds light on the phrase "local government official" under

11   § 12650(b)(8). *See generally United Savings Assn. of Texas v. Timbers of Inwood Forest Assocs.,*

12   *Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor. A provision

13   that may seem ambiguous in isolation is often clarified by the remainder of the statutory

14   scheme—because the same terminology is used elsewhere in a context that makes its meaning

15   clear."). Section 12650(b)(3) of the CFCA sets out the type of local government entities

16   protected under the statute, "political subdivisions," and defines a political subdivision as "any

17   city, city and county, county, tax or assessment district, or other legally authorized local

18   government entity with jurisdictional boundaries." Cal. Gov. Code § 12650(b)(3). Reading

19   § 12650(b)(8) in its statutory context suggests that a "local government official" refers to an

20   official employed by the type of local government entity the CFCA seeks to protect, a political

21   subdivision. *See Debro v. Los Angeles Raiders*, 92 Cal. App. 4th 940, 949 (2001) (stating that "it

22   is clear from the plain language of the statue that the 'official of the . . . political subdivision

23   charged with responsibility to act' pertains to the responsible persons with the City of Oakland

24   and Alameda County"). This interpretation is also consistent with other provisions of the CFCA

25   that authorize entities besides public prosecutors to pursue political subdivision funds. Under

26   § 12652(c), private parties may initiate CFCA actions on behalf of political subdivisions through

27   *qui tam* actions and can, under certain circumstances, prosecute such actions without oversight

28   from government prosecutors. *See* Cal. Gov. Code § 12652(c) (noting that private parties

9

1  pursuing funds in the name of a political subdivision must serve the Attorney General with a copy

2  of the suit, but that such plaintiffs may prosecute the case independently if the Attorney General

3  does not intervene in the suit within sixty days); § 12652(g)(2)–(3) (providing incentives for *qui*

4  *tam* plaintiffs to bring CFCA actions by establishing that such plaintiffs shall receive between 15–

5  33% of any recovery in actions where the government intervenes, and 25–50% of any recovery in

6  actions without government intervention).  Narrowly interpreting "prosecuting authorities" under

7  § 12650 would seemingly cut against the provisions of § 12652(c) that broadly authorize private

8  party actions to be brought on behalf of political subdivisions.

9         A broad interpretation of the term "prosecuting authorities" under § 12652 is also

10  consistent with the CFCA's statutory purpose.  *See generally Daas*, 198 F.3d at 1174 ("The

11  purpose of statutory construction is to discern the intent of Congress in enacting a particular

12  statute.").  The principal objective of the CFCA is to create a mechanism for defrauded local

13  government entities to recover lost funds.  *See Wells v. One2One Learning Found.*, 39 Cal. 4th

14  1167, 1196 (2006) ("The ultimate purpose of the [CFCA] is to protect the public fisc.").  A broad

15  interpretation of the phrase "other local government officials" is in keeping with this aim, because

16  it would permit political subdivisions to independently pursue lost funds without requiring

17  involvement from external government officials, thereby minimizing barriers for recovery of

18  public funds.  In contrast, interpreting § 12650(b)(8) to prohibit political subdivisions from

19  independently pursuing false claims actions would hamper the ability of political subdivisions to

20  pursue lost funds, conflicting with the primary purpose of the CFCA.

21         Defendant argues that the broad interpretation of "local government official" would grant

22  limitless, unchecked authority to local government entities by allowing them to file CFCA claims

23  without oversight.  The court disagrees.  For one, the CFCA continues to provide a scheme for

24  oversight of prosecuting authorities pursuing state funds.  Section 12652 of the CFCA requires

25  that a prosecuting authority seeking recovery of both political subdivision and state funds serve

26  the Attorney General with a copy of the complaint, giving the Attorney General an opportunity to

27  intervene and assume primary responsibility for the action.  Cal. Gov. Code § 12652(b)(2).

28  Additionally, the CFCA prevents a prosecuting authority from a particular political subdivision

10

1    from pursuing funds corresponding to a different political subdivision.  In other words, "the only

2    official who may [sue to recover political subdivision funds] is the prosecuting authority of the

3    'particular' political subdivision that was actually defrauded."  *See State Ex Rel. Harris*, 39 Cal.

4    4th at 1228.  These limits, while perhaps not extensive, provide some restrictions on the power of

5    prosecuting authorities to initiate CFCA actions on behalf of local government.

6        Having concluded that § 12650(b)(8) permits employees of political subdivisions to

7    constitute "prosecuting authorities" under that statute, the court also finds that plaintiff has

8    adequately alleged standing to brings its CFCA claims.  Both parties agree that plaintiff Sierra

9    View constitutes a political subdivision within the meaning of CFCA § 12650(b)(3).  (Doc. No.

10    78 at 5.)  In the SAC plaintiff also alleges that its BOD, CEO, and CFO are authorized to

11    investigate, file, and conduct legal proceedings on behalf of the district as the district's

12    prosecuting authorities. (Doc. No. 67 at 18, ¶ 69.)  Viewing these allegations in the light most

13    favorable to plaintiff, as the court is required to do in assessing defendant's motion for judgment

14    on the pleadings, the court concludes at this stage of the litigation that plaintiff has standing to

15    pursue CFCA claims on behalf of the Sierra View political subdivision.  *See Living Designs, Inc.*,

16    431 F.3d at 360 (noting that, on a motion for judgment on the pleadings, facts are viewed in the

17    light most favorable to the non-moving party and all reasonable inferences are drawn in favor of

18    that party).

19        Accordingly, defendant's motion for judgment on the pleadings will be denied.

20                     CONCLUSION

21        For all of the reasons set forth above, defendant's motion for judgment on the pleadings

22    (Doc. No. 75) is denied.

23    IT IS SO ORDERED.

24      Dated:   **January 18, 2017**

25                               UNITED STATES DISTRICT JUDGE

26

27

28